## G. O. LEWIS COMPANY *v.* ERVING.

1. MECHANICS' LIENS—APPEAL—EVIDENCE.
    The Court of Appeals will not disturb the findings of the trial court, on appeal in suit to enforce a mechanic's lien, where the findings are supported by the record (CL 1948 and CLS 1956, § 570.1 *et seq.*).

2. SAME — WRITTEN CONTRACT — COLLAPSE OF WALL — CHANGE IN PLANS.
    Defendant's contention in contractor's suit to enforce a mechanic's lien that the lien was expressly based on a written contract which showed plaintiff contractor had assumed the responsibilities for the claims *held*, not supported by the record, where collapse of common wall after contract had been executed necessitated change in plans by defendants.

3. SAME—EXPRESS CONTRACT—IMPLIED PROMISE TO PAY—EXTRAS.
    Defendant's contention in contractor's suit to enforce a mechanic's lien that the trial court erred in allowing a lien based on an implied promise to pay when the actual statement of account was filed on an express contract *held*, not supported by the record, as the statement of lien definitely showed that the claim was for the extras under the contract and not based explicitly on the written contract alone.

4. SAME—IMPLIED PROMISE TO PAY—CHANGE IN PLANS.
    Defendant's contention in contractor's suit to enforce a mechanic's lien that the lien was improper because based on the

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 36 Am Jur, Mechanics' Liens § 292.
    5 Am Jur 2d, Appeal and Error §§ 702, 704, 882.
[2] 36 Am Jur, Mechanics' Liens §§ 274, 279.
[3, 4] 36 Am Jur, Mechanics' Liens §§ 81, 114.
[5] 36 Am Jur, Mechanics' Liens § 169.
[6] 36 Am Jur, Mechanics' Liens §§ 176, 181.
    Time when contractor commenced work or time when labor or material for which lien is claimed was furnished as date of mechanic's lien. 83 ALR 925.

cost of work never authorized in writing and never acknowledged as defendant had submitted changes in the plans and specifications and had knowledge of the work as it progressed, the trial court having correctly found that the defendant owner had impliedly promised to pay.

5. SAME—IMPROVEMENTS NOT ON DEFENDANT'S PROPERTY.

Defendant's contention in contractor's suit to enforce a mechanic's lien that a lien cannot be given for work not performed on defendant owner's property *held*, not correct, as the work on these items was intrinsically interwoven into the overall construction program.

6. SAME—PRIORITY OF CLAIMS—MORTGAGE.

Plaintiff's claim in a contractor's suit to enforce a mechanic's lien takes priority over the claim of the mortgagor where the mortgage was executed long after construction had begun (CLS 1961, § 570.9).

Appeal from Calhoun; Coleman (Creighton R.), J. Submitted Division 3 March 9, 1966, at Grand Rapids. (Docket No. 474.) Decided October 25, 1966.

Complaint by G. O. Lewis Company, a Michigan corporation, against Jane M. Erving, Franklin Life Insurance Company, an Illinois corporation, and J. C. Penney Company, a Delaware corporation, to foreclose a mechanic's lien. Judgment for plaintiff. Defendants appeal. Affirmed.

*Vandervoort, McFee, Christ & Carpenter* (*Millard Vandervoort* and *Robert D. McFee,* of counsel), for plaintiff.

*Allen & Allen* (*John M. Allen,* of counsel) and *Reid & Gilmore* (*G. Norman Gilmore,* of counsel), for defendants.

BURNS, J. The present suit was brought to foreclose a mechanic's lien under CL 1948, and CLS

1956, § 570.1 *et seq.* (Stat Ann 1953 Rev and Stat Ann 1959 Cum Supp § 26.281 *et seq.*).*

The trial court determined that the plaintiff had a lien on the property owned by defendant Erving, said lien having priority over all other claims, and if, after a final report of sale, any portion of this amount remained unpaid, the court would enter a personal judgment against Erving for the amount outstanding.

On January 21, 1959, plaintiff entered into a contract with defendant Erving for the construction of a commercial building to be occupied by the defendant J. C. Penney Company. Defendant Franklin Life Insurance Company furnished mortgage money for said construction.

The building was to be constructed on a site from which 2 buildings had been removed by another contractor. A common wall about 80 feet in length between the Erving property and property owned by one Austin, was left standing. The city of Battle Creek on January 26, 1959, denied a building permit because of a zoning problem and the failure to submit plans to a registered Michigan architect. On January 28, 1959, plaintiff did obtain a limited building permit to reinforce footings and foundations of adjacent buildings, including said party wall.

On June 4, 1959, a building permit was finally issued on the basis of new plans and specifications under the seal of Eric Friis, an architect registered in Michigan.

The common wall between the Erving property and the Austin property collapsed on March 25, 1959. The only testimony as to the cause of the collapse was that of Christopher King, an architect called as a witness by plaintiff, who testified the

---

* See, currently, CL 1948 and CLS 1961, § 570.1 *et seq.* (Stat Ann 1953 Rev and 1965 Cum Supp § 26.281 *et seq.*).

alternate freezing and thawing of the soil behind the wall caused pressure which forced the wall apart. Had there been no delay in obtaining the building permit, plaintiff would have been able to construct a permanent wall adjacent to the common wall, which would have prevented the collapse. Plaintiff proceeded with the contract of January 21, 1959, under new plans modified by 3 written change orders.

On May 7, 1960, the plaintiff received $273,529.54 upon the contract as revised by the change orders. Plaintiff executed its statement of account and lien on July 22, 1960.

The trial judge made the following findings of fact:

"It is clear that the original contract and construction was substantially modified to cover the building of a new wall, new footings, new elevator location, et cetera; that there was an emergency created by the collapse and someone had to take action; that defendants knew what action was being taken and approved said action; that all of the work in question was performed under the original contract as modified by the parties to the contract; that the delay in the furnishing of the plans was occasioned by the defendants; that the physical conditions of the adjacent property to the east were not known in detail to any party; that the practice of the trade would not call for more inspection than was done by contractor; that the lien was timely filed; and that plaintiff acted reasonably once the collapse occurred.     *     *     *

"Much of the construction included in the instant cause of action took place with the full knowledge and cooperation of defendants Jane M. Erving and J. C. Penney Company through architect Kite. The practice of the parties under the subject construction contract was such that this court finds that defendants waived the requirement that extras and authorizations be reduced to writing prior to the work

being done.  Much of the work involved in this action was done by the furnishing of drawings and details.  Many of the items in question in this suit were necessitated by a change of plans certainly not under the control of plaintiff.  *  *  *  Defendants cannot order such changes by changing plans and then refuse to pay for the extra costs involved.  *  *  *

"All of the items listed were costs for the direct benefit for the defendants, were necessitated by the continued construction of the building in face of the collapse, and had to be performed as a part of the overall construction project.  *  *  *

"The damage in this case was not due to contractor's acts or omissions.  *  *  *

"Defendants also point to section 2–5 which provides in part that the contractor would: 'Provide all shoring and bracing as conditions require and as direct (sic) to prevent caving in of banks, walls, and damage to adjacent property.'  Plaintiff was not directed by the architect or owner to shore the wall in question prior to the collapse.  Substantial shoring is costly and is an extra under a contract, and under this contract.  The phrase 'as conditions require' are not words of guarantee or insurance.  Had the plans been available conditions would not have required shoring; however, in the light of hindsight, with the delay of plans, conditions did require shoring.  *  *  *

"Exhibit H, a letter from plaintiff to Burton Abstract and Title Company, dated July 18, 1960, pointed out that plaintiff was reserving certain lien rights in case a complete settlement of the matter was not reached."

Defendant Erving has raised several alleged errors, but in each case the statements of error are either in direct conflict with the record or the findings of the trial judge, and we do not reverse such findings of the trial court if they are supported by the

proofs. *Sacchetti* v. *Recreation Company* (1943), 304 Mich 185.

Defendants claim the lien was expressly based on a written contract which showed the plaintiff had assumed the responsibilities for the claims. In this instance the trial court found otherwise.

Defendants contend the court erred in allowing a lien based on an implied promise to pay when the actual statement of account was filed on an express contract. The record does not bear out this claim, as the statement of lien definitely showed that the claim was for the extras under the contract and not based explicitly on the written contract alone.

The claim of the defendants that the lien was excessive is not borne out by the testimony because the amount on the statement of account and lien is the same amount found to be due by the trial judge.

Defendants also complain the lien was based on the cost of work never authorized in writing and never acknowledged as the owner's obligation. In light of the fact that the defendants had submitted changes in the plans and specifications and had knowledge of the work as it progressed, the trial court correctly found that the defendant had impliedly promised to pay.

Defendants further claim a lien cannot be given for work not performed on defendant Erving's property. The cases cited by the defendants are not in point, and there is no doubt that the items complained of were intrinsically interwoven into the overall construction program.

Defendant Erving contends the trial judge erred by granting a money judgment against her when the bill of complaint only prayed for a foreclosure of a mechanic's lien. The defendant is in error. Plaintiff's bill of complaint did pray that the court order the balance of any moneys owing to G. O. Lewis

Company to be paid. See CL 1948, § 570.14 (Stat Ann 1953 Rev § 26.294).

The last ground claimed by the defendants involves the priority of claims between Franklin Life Insurance Company, the mortgagor, and the plaintiff. CLS 1961, § 570.9 (Stat Ann 1965 Cum Supp § 26.289) resolves this issue:

"Liens shall take priority as follows: * * *
"Third, they shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said building or buildings, erection, structure or improvement."

It is undisputed that the mortgage was executed long after construction had begun and therefore is secondary to the plaintiff's mechanic's lien unless, as defendants argue, plaintiff waived its right to assert a lien when it received the $273,529.54 payment. As pointed out by the trial judge, in the execution of its waiver of lien the plaintiff was very careful to waive only its right to the extent of payments received and to reserve other lien rights in case a complete settlement was not reached.

Judgment of the trial court is hereby affirmed. Costs to appellees.

FITZGERALD, P. J., and J. H. GILLIS, J., concurred.